UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ADRIANA JARAMILLO BAILON, *on behalf of herself, and those similarly situated*,

                Plaintiff,

    -against-

QSR MANAGEMENT LLC, HYLAN-QUINTARD LLC, ROSSVILLE WOODROW LLC, AMBOY-CLARKE LLC, ANTON NADER, MOHAMMAD LNU, and HIRAM LNU, *jointly and severally*,

                Defendants.
------------------------------------------------------------X

**ORDER**
22 CV 879 (CLP)

**POLLAK**, Chief United States Magistrate Judge:

    On February 16, 2022, plaintiff Adriana Jaramillo Bailon ("plaintiff") filed this action against QSR Management, Hylan-Quintard LLC, Rossville Woodrow LLC, Amboy-Clarke LLC, Anton Nader, Mohammad LNU, and Hiram LNU (collectively, "defendants"), seeking damages for unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours premiums, deprivation of sick days, and violations of wage notice and wage statement requirements, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., the New York Labor Law ("NYLL") §§ 190, et seq. and 650, et seq., and N.Y. Comp. Codes R. & Regs. Title 12, § 142-2.4. (See ECF No. 1). She also alleged unlawful discrimination in violation of the New York City Human Rights Law. (Id.)

    The parties reached a settlement of this matter for the wage claims, the terms of which are set forth in the Wage Settlement Agreement and Release, filed with the Court. (See Sett.

Agr.[1]).  On July 22, 2022, plaintiff filed a letter motion requesting that the Court approve the fully executed Wage Settlement Agreement and Release as fair and reasonable under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 207 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016).  (See ECF No. 21).  Plaintiff's counsel submitted her retainer agreement with plaintiff in conjunction with this motion.  (See ECF No. 21-3).  On September 7, 2022, the Court held a fairness hearing on the parties' motions.  (See Minute Entry dated Sept. 8, 2022).  For the reasons set forth below, the Court approves the parties' settlement as fair and reasonable.

FACTUAL AND PROCEDURAL BACKGROUND

In her Complaint, plaintiff alleges that she worked for defendants at various Dunkin' Donuts franchises as a counterperson and stocker from 2015 to about October 2, 2021.  (Compl.[2] ¶¶ 35-36).  She alleges that from 2015 to 2017, she worked 9.5 hours a day, five or six days per week, thereby working a total of 47.5 or 57 hours per week.  (Id. ¶¶ 39-40).  Then from 2017 to approximately June 2021, plaintiff worked 9.5 hours a day, seven days per week, thereby working 66.5 hours per week.  (Id. ¶¶ 41-42).  From July 2021 to September 2021, plaintiff worked 9.5 hours a day, ordinarily seven days per week, in addition to two additional shifts that were eight hours and then seven hours, thereby working 81.5 hours per week.  (Id. ¶¶ 43-44).  Plaintiff alleges that when she was first hired, she was informed that she would be paid $12 per hour, but that she was never paid $12 per hour nor did she receive overtime pay.  (Id. ¶¶ 45-46).  She also claims she was paid in cash and was told she would receive $350 for her first four days

---

[1] Citations to "Sett. Agr." refer to the Wage Settlement Agreement and Release, filed as Exhibit I to plaintiff's Motion for Settlement Approval, filed on July 22, 2022, ECF No. 21-1.

[2] Citations to "Compl." refer to plaintiff's Complaint, filed on February 16, 2022, ECF No. 1.

worked and then $90 per shift thereafter. (Id. ¶¶ 52, 56). Plaintiff is not sure of her specific hourly rate, but she nevertheless alleges that she was not paid minimum wage. (Id. ¶ 57).

Plaintiff alleges that since at least February 16, 2019, defendants failed to pay her minimum wages and failed to pay overtime for all hours worked in excess of 40 hours per week. (Id. ¶¶ 2-3, 64-65, 97-115). Plaintiff also alleges that defendants failed to provide her with adequate meal breaks, failed to pay spread of hours premium, and denied her sick days. (Id. ¶¶ 3, 66-70, 122-27). She further alleges that she was subjected to a disparate workload and fired because of her perceived immigration status. (Id. ¶¶ 71-72, 128-30). Lastly, she alleges that defendants violated notice and recordkeeping requirements by failing to provide her with wage notices and accurate wage statements. (Id. ¶¶ 4, 62, 90, 116-21).

On July 11, 2022, the parties informed the Court that they had reached a settlement in principle. (See ECF No. 18). Thereafter, on July 22, 2022, the parties filed their Cheeks documents for the Court's approval. (See ECF No. 21). That day, the parties also filed their consent to jurisdiction by Magistrate (see ECF No. 20), which was then approved by the district court on August 9, 2022. (See ECF No. 22).

The parties propose to settle the wage claims in this matter for a total of $62,500. (Pl. Mot.[3] at 3; Sett. Agr. ¶ 2(a)). Of that amount, plaintiff is to receive $41,266.67[4] and plaintiff's counsel is to receive $20,8333.33 in fees, in addition to $400 in costs. (Pl. Mot. at 5). For the reasons set forth below, the Court approves this Settlement Agreement and Release as fair and reasonable. Although the Complaint was filed as a class and collective action, no certification

---

[3] Citations to "Pl. Mot." refer to plaintiff's Motion for Settlement Approval, filed on July 22, 2022, ECF No. 21.

[4] The Court notes that this amount is calculated by subtracting the amount of attorney's fees and costs sought by plaintiff's counsel ($20,833.33 + $400 = $21,233.33) from the total settlement amount of $62,500.

had been sought or granted, and no opt-in plaintiffs joined; therefore, the matter is being settled as to plaintiff, only.

## DISCUSSION

A. Legal Standards

In considering whether to approve an FLSA settlement, courts consider whether the agreement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008) (internal quotation mark and brackets omitted) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (holding that where an FLSA settlement is a reasonable compromise, the settlement should be approved to "promote the policy of encouraging settlement of litigation")). Courts have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotations and citations omitted); see also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *2-3 (E.D.N.Y. Jan. 25, 2018) (endorsing the factors from Wolinsky).

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc., 948

4

F.3d 593, 606 (2d Cir. 2020) (citing Evans v. Jeff D., 475 U.S. 717, 727 (1986)).  "[E]ven though a district court has a duty to review an FLSA settlement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contract provisions it finds objectionable."  Id.  Rather, if the court finds one or more provisions of a FLSA settlement agreement to be unreasonable, the Court must reject the proposed settlement.  See id. at 605.

B. Settlement Terms

The Court finds that the terms of the Wage Settlement Agreement and Release are fair and reasonable.  The written agreement does not contain any confidentiality clauses, non-employment clauses, or non-disparagement clauses.  Although there is a general release of claims, the release of claims against defendants is limited to wage and hour claims arising from plaintiff's employment with defendants.[5]  (Sett. Agr. ¶ 4).  A release limited to the claims at issue in this lawsuit does not offend Cheeks.  Cf. Lopez v. 41-06 Bell Blvd. Bakery LLC, No. 15 CV 6953, 2016 WL 6156199, at *2 (E.D.N.Y. Oct. 3, 2016) (holding that "broad general releases" contravene the protective nature of the FLSA), report and recommendation adopted, No. 15 CV 6953, 2016 WL 6208481 (E.D.N.Y. Oct. 21, 2016); Gonzales v. Lovin Oven Catering of Suffolk, Inc., No. 14 CV 2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (holding that a settlement agreement containing a general release "from all actions and/or claims for unpaid overtime or wages . . . and any other actions and/or claims . . . , known or unknown" violated the FLSA).

---

[5] Specifically, the clause states: "Plaintiff knowingly and voluntarily releases and forever discharge Defendants of and from any and all wage and hour claims in connection with Plaintiff's employment by Defendants, as of the date of execution of this Agreement, consistent with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015)."  (Sett. Agr. ¶ 4).

1. <u>Settlement Amount</u>

The parties propose to settle this matter for a total of $62,500. (Pl. Mot. at 3; Sett. Agr. ¶ 2(a)). The parties disagree on the amount of plaintiff's possible recovery. (Pl. Mot. at 3). Plaintiff alleges that her maximum potential recovery would be $188,797.13, inclusive of liquidated damages and penalties, and that she would be owed $94,398.57 in actual lost wages. (<u>Id.</u>) Defendants dispute the number of overtime hours plaintiff alleged she worked and contend that plaintiff was paid for the overwhelming number of hours worked. (<u>Id.</u>) Defendants claim that, at most, plaintiff is owed $100 per week in overtime and/or minimum wages, which would amount to $31,200[6] in lost wages, which, when doubled for liquidated damages, would result in a total estimated exposure of $62,400. (<u>Id.</u>)

The proposed settlement amount of $62,500 therefore represents about 33.10% of plaintiff's estimated maximum potential recovery, and 66.2% of alleged actual wages owed. However, plaintiff acknowledges that she faces a risk that she would not prevail on her claims if she proceeded to trial. Indeed, the parties have exchanged informal discovery of pay stubs and time clock entries "that in part support Defendants' view," as there are "fewer hours worked on the clock than Plaintiff alleges." (<u>Id.</u> at 4). In light of the risk that plaintiff would not prevail at trial given those records, plaintiff requests that the Court approve the settlement as fair "to allow her to move on with a result certain." (<u>Id.</u>) Plaintiff also notes that the Settlement Agreement avoids additional costly litigation, particularly over the question of how many hours plaintiff actually worked. (<u>Id.</u>) Since this case has settled relatively early, the settlement prevents "more extensive and likely costly litigation," a factor that weighs in favor of finding that the settlement

---

[6] The Court assumes by this number that plaintiff worked for defendants' franchise locations for a total of 312 weeks.

was reasonable. Calle v. Elite Specialty Coatings Plus, Inc., No. 13 CV 6126, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014).

Weighing the settlement amount agreed to here against the inherent risks and burdens that plaintiff would face in pursuing the litigation, and seeing no issues regarding potential fraud or collusion in this case, the Court finds the settlement to be fair and reasonable. See Wolinsky v. Scholastic Inc., 900 F. Supp. 2d at 335.

2. Attorney's Fees and Costs

When determining whether attorney's fees in FLSA settlements are reasonable, courts are to consider the factors set out by the Second Circuit in Goldberger v. Integrated Res., Inc.: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." 209 F.3d 43, 50 (2d Cir. 2000); see also Allen v. Taylor, 795 Fed. Appx. 79, 80 (2d Cir. 2020).

In calculating attorney's fees, courts have used one of two methods: the "lodestar" method and the "percentage-of-recovery" method. Allen v. Taylor, 795 Fed. Appx. at 80. When using the "lodestar" method, courts multiply the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on

7

certain other factors.  Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7; see Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

Under the "percentage-of-recovery"[7] method, courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable.  Romero v. Westbury Jeep Chrysler Dodge, Inc., No. 15 CV 4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016) (citing cases).  In FLSA cases, regardless of the method used, "'[t]he Court must . . . separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined.'"  Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015) (quoting Lliguichuzcha v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013)).

Here, plaintiff's counsel has used the "percentage-of-recovery" method to seek compensation, including costs, equaling approximately 33.33% of the total, or $20,833.33 pursuant to a retainer agreement with the plaintiff.  (Pl. Mot. at 5; see also ECF No. 21-3).  Plaintiff's counsel has worked in the employment law field and dealt with FLSA issues since 2014.  (Pl. Mot. at 4).  As noted, a one-third fee is routinely found reasonable in this circuit.  See Romero v. Westbury Jeep Chrysler Dodge, Inc., 2016 WL 1369389, at *2.  Accordingly, the Court finds that the attorney's fee is reasonable relative to the settlement amount given her familiarity with the work performed and the fact that the parties engaged in in-person negotiation and exchanged extensive informal discovery.  (Pl. Mot. at 2).  The other Goldberger factors also weigh in favor of finding the award fair and reasonable: the risks of litigation are high, "FLSA claims typically involve complex mixed questions of fact and law," Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 743 (1981), and the public policy goal of encouraging attorneys

---

[7] This method has also been referred to as the "percentage of the fund" method.

to take on FLSA and NYLL actions that protect the wages of workers is served here.  See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481 (S.D.N.Y. 2013).

Lastly, courts often award costs that are "incidental and necessary to [plaintiff's] representation."  Mitland Raleigh-Durham v. Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993).  Here, plaintiff states that the filing costs incurred are $400.  (Pl. Mot. at 5).  Based on a review of the docket, the Court has determined that the filing fee was $402.  Courts have found that filing fees and the costs of service certainly qualify as necessary aspects of this litigation.  See In re Indep. Energy Holdings PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003).  Accordingly, the Court finds plaintiff should be awarded costs in the amount of $400, representing the filing fee in this case.[8]

In summary, this Court finds that plaintiff's requested amount in attorney's fees, in addition to $400 in costs, is fair and reasonable.

## CONCLUSION

In this case, after holding a fairness hearing and reviewing the parties' submission, the Court finds the wage settlement reached is a fair and reasonable compromise of plaintiff's claims, considering the amount received, the issues of potential liability that might have limited recovery, and the fact that the parties engaged in arms-length negotiations among experienced counsel, sufficient to gain an understanding of the risks and benefits of proceeding with the litigation.  Cf. Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d at 335.  The Court also approves the counsel's reasonable request for costs and fees.

---

[8] Although it appears from the docket that filing fees were $402, because plaintiff has asked for only $400 in fees, the Court has approved the amount requested.

9

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED**.

Dated:  Brooklyn, New York
          September 26, 2022

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York